Commonwealth of Pennsylvania, Department of Environmental Resources, Petitioner *v.* Dixon Contracting Company, Inc., Respondent.

Argued November 17, 1983, before Judges ROGERS, MacPHAIL and BARRY, sitting as a panel of three.

*Michael L. Harvey*, Deputy Attorney General, with him *Allen C. Warshaw*, Deputy Attorney General, Chief of Special Litigation, and *LeRoy S. Zimmerman*, Attorney General, for petitioner.

*Richard C. Fox*, with him *Robert E. Chernicoff*, *Fox, Farr & Cunningham*, for respondent.

OPINION BY JUDGE MacPHAIL, February 27, 1984:

The Commonwealth of Pennsylvania, Department of Environmental Resources (Petitioner), appeals from an order by the Board of Claims (Board) which awarded Dixon Contracting Company (Respondent) the sum of $371,768.85 with interest which the Board found to be due Respondent by virtue of its determination that the award, issuance and execution of a con-

tract between Petitioner and Respondent to eliminate air pollution from an abandoned burning culm bank was valid.

Petitioner in 1969, advertised and invited bids for the control and elimination of air pollution resulting from an abandoned coal burning refuse bank known as the Huber Bank. The bids contained certain specifications[1] requiring each bidder to set forth the number of eight hour work days in which the work could be completed. These specifications also included that Petitioner might increase or decrease the number of operating days with compensation at a proportional rate. Respondent bid the highest number of days, 70, and was awarded the contract.

Prior to the execution of the contract, a determination was made to increase the number of operating days to 392 with the same per diem rate as that of the 70 days originally bid by Respondent. Respondent commenced work under the contract and on or about January 12, 1971, Petitioner and Respondent executed an "Addendum" which extended the original contract and provided for an additional 210 operating days to be paid at the same per diem rate as the original 70 days. Both increases in the number of operating days occurred without resubmission of bids.

Respondent performed all the work under the contract and submitted invoices to Petitioner for the entire contract amount. Petitioner withheld payment of the last four invoices alleging that the contract was unenforceable because appropriated money under Section 16 of the Land and Water Conservation and Rec-

---

[1] These specifications were called "The Land and Water Conservation and Reclamation Act Air Pollution Elimination Project, No. S.L. 204." The specifications were incorporated into the contract by attachment and reference. Project S.L. 204 will be referred to as the "contract."

lamation Act (Act)[2] was designated to extinguish culm bank fires on publicly owned land and Huber Bank was privately owned, and because the addendum to the contract was executed without resubmitting bids. Petitioner alleged that the contract stated full payment was to be made only when the full complement of specified equipment was operating. Since two water monitors and one dragline were inoperative during periods when Respondent submitted the last four invoices, Petitioner claims that the Board should have deducted these hours from the amount invoiced by Respondent.

After a hearing, the Board found that Petitioner was estopped from asserting the alleged illegality of the contract as a defense. Petitioner argued that under Section 16(a)(1) of the Act, appropriated money could be used to extinguish coal burning refuse banks on publicly owned land, therefore, money appropriated for Huber Bank, privately owned land, would render the contract void. The Board, however, found that Section 16 permits the filing of a consent lien[3] as an alternative to public ownership of the land in order to proceed with the extinguishment of bank fires. Since the Petitioner 1) originally interpreted Section 16 as

---

[2] Act of January 19, 1968, P.L. (1967) 996, *as amended*, 32 P.S. §5116.

[3] At the revelant time, Section 16, *inter alia*, provided that whenever Secretary of Mines and Mineral Industries (Secretary) made the finding of fact that it was within the public interest to combat air pollution from a refuse bank fire or if an emergency existed and no other person or agency could combat the condition, then the Secretary, political subdivisions of the Commonwealth or municipalities, their agents, employes or contractors would have the right to enter the premises to combat the refuse bank fire. Within six months after the completion of the work on the property, the Secretary was required to itemize the monies so expended whereupon such statement would constitute a lien upon the property.

authorizing the consent lien procedure[4] 2) awarded the contract to Respondent in accord with that interpretation and 3) directed Respondent to perform the contract, the Board found that Petitioner wrongfully induced Respondent to believe in the validity of the consent lien procedure. The Board also found that the extensions to the original contract were valid without resubmitting bids and that Respondent fully complied with the contract, to the satisfaction of Petitioner's job inspector, even though Respondent's dragline and water monitors were inoperative at certain times during performance of the contract. The Board awarded Respondent the sum of the unpaid invoices.[5] We affirm.

Petitioner relies on our decision in *Department of Public Welfare v. Harambee, Inc., (Harambee)*, 21 Pa. Commonwealth Ct. 430, 346 A.2d 594 (1975) to argue that contracts between the Commonwealth and a third party for a purpose to which no money has been appropriated are void and unenforceable. In that case

---

[4] In October 1969, Deputy Attorney General Robert Lesko issued a memorandum which interpreted Section 16 of the Act. The memorandum stated that the Secretary of Mines and Mineral Industries has the discretion to either assert a right of entry or condemn the property. Specifically, the memorandum stated that:

[i]f the legislature had intended that condemnation was mandatory, then the lien provision would be redundant; the Commonwealth would then have a lien against property which it owned. The lien provision would be meaningless because if one acquires fee title to property a lien held by that person against the property blends with the fee and terminates. Laws should not be interpreted to arrive at absurd or meaningless conclusions.

[5] The Board awarded Respondent $221,768.85 for the four unpaid invoices and the sum of $150,000 which was retained by Petitioner pursuant to its retention rights under the contract plus six percent interest from November 19, 1971, the date of the invoices and retainage.

we held that the legislature did not appropriate funds for the Department of Public Welfare to use for non-governmental programs.

The Board correctly distinguished *Harambee* from the case *sub judice*. First, Section 20 of the Act[6] specifically appropriates funds for the elimination of refuse bank fires as set forth under Section 16. Second, the funds were used to extinguish the culm bank fire, therefore, misapplication of funds is not at issue here. Third, Respondent used the consent lien procedure on previous culm bank contracts[7] and Petitioner neither advised Respondent of any statutory interpretation problems regarding this procedure nor demanded return of the monies paid under those contracts. The Board properly estopped Petitioner from asserting the alleged invalidity of the consent lien procedure because Petitioner did not show that this procedure violated the Act, and Petitioner induced Respondent to believe in the validity of the consent lien procedure by directing Respondent to perform. Equitable estoppel can be applied to a governmental agency to preclude the agency from depriving a person of a reasonable expectation when such agency knew or should have known that such person would rely upon the representation of the agency. *De Frank v. County of Greene,* 50 Pa. Commonwealth Ct. 30, 412 A.2d 663 (1980).

Petitioner's argument that the contract is unenforceable because the addendum extending the number of work days was executed without resubmitting bids is without merit. In *American Totalisator Company,*

---

[6] 32 P.S. §5120.

[7] According to the Stipulation of Facts, consent lien procedure was used on all contracts let by Petitioner under the Act. With respect to culm bank fires, it was used on S.L. 201, S.L. 201-1 and S.L. 207 and in each case Respondent was the contractor.

*Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980) our Supreme Court held that if the Commonwealth elected to use public bidding, it was bound by its specified bidding procedures. The specifications to the contract in the case *sub judice* stated that Petitioner could increase or decrease the number of operating days without requiring resubmission of bids. Since the specifications provided for extensions without further bidding, Petitioner is bound by these specifications and the addendum is valid without resubmission of bids.

Petitioner's last argument is that according to the specifications, no payment will be made when the water monitors are not operating, and one-half of the hourly rate will be paid when only one of the draglines is operating. Petitioner seeks to reduce Respondent's claim by the number of hours that the water monitors and dragline were inoperative.

The Board found that when the specified equipment was inoperative, Respondent continued to work with other equipment at the instruction of Petitioner's job inspector.[8] Daily reports were filed by Petitioner's inspector, such that Petitioner could have immediately stopped Respondent's work if it was not in conformity with the specifications of the contract. Petitioner, however, regularly paid all invoices submitted by Respondent and waited until performance was totally completed before objecting to the payment of the last four invoices. The Board properly estopped Petitioner from denying payment to Respondent since Respondent relied on, and completed performance un-

---

[8] The specifications defined Petitioner's job inspector as "the person or persons duly authorized by the Secretary of Mines and Mineral Industries to represent the Department in this project and to see that the work is done in compliance with the specifications and Contract and to accomplish the purpose of this project."

der the instructions of Petitioner's authorized representative.

After review of the record, we hold that the Board's findings of fact are supported by substantial evidence.

We affirm.

ORDER

The order of the Board of Claims, No. 277, dated February 24, 1983 is affirmed.