624 A.2d 247

**DEPARTMENT OF COMMERCE, Petitioner,**

v.

**Robert J. CASEY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1993.

Decided April 1, 1993.

506

508

Craig R. Shagin, Chief Counsel, for petitioner.

Gerald L. Rutledge, for respondent.

Before COLINS and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

The Pennsylvania Department of Commerce (Department) appeals from an order of the Pennsylvania Board of Claims (board), dated June 2, 1992, wherein the board found in favor of Robert J. Casey (Casey) and against the Department and the Pennsylvania High Speed Intercity Rail Passenger Commission (Commission) in the amount of $9,700, plus interest at the legal rate of six percent (6%) per annum beginning April 13, 1989. We affirm.

After a hearing, the board made the following findings of fact:

1. Plaintiff, Robert J. Casey, is an international expert in the field of high-speed ground transportation. He served as Executive Director of the Five State (Pennsylvania, Ohio, Illinois, Michigan and Indiana) High Speed Rail Compact, Executive Director of the Ohio Rail Transportation Authority, Executive Director of the Pennsylvania Intercity High Speed Rail Passenger Commission, and since 1983, as Executive Director of the International High Speed Rail Association. (Complaint and Answer, Paragraph 1)

2. Defendant, Pennsylvania High Speed Intercity Rail Passenger Commission (hereinafter referred to as "Commission"), was an agency of the Commonwealth of Pennsylvania, established under Act 1981–144, dated December 22, 1981, with offices in Harrisburg, Pennsylvania. (Complaint and Answer, Paragraph 2)

3. Defendant, Commonwealth of Pennsylvania, Department of Commerce (hereinafter referred to as the "Department"), is an administrative Department of the Commonwealth of Pennsylvania, which was designated by the State of Pennsylvania to accept a federal grant. (Complaint and Answer, Paragraph 3)

4. The Commission was charged with the overall responsibility, power, and duty to investigate, study and make recommendations concerning the need for an establishment and operation of a high speed intercity rail passenger system in the Commonwealth of Pennsylvania. (Complaint and Answer, Paragraph 6)

5. The Commission continued as an agency of the Commonwealth until it expired by law on December 31, 1987, and continued to hold public, official meetings, with due public notices required by law. (Complaint and Answer, Paragraph 8)

6. The Commission, during these meetings, expressed the need to produce a Final Report. (Complaint and Answer, Paragraph 9)

7. The Commission devised a plan relative to the production of a Final Report, whereby application for a federal grant would be made and employment of experts in the field of high speed rail would be utilized to produce the Final Report. (Complaint, Paragraphs 9(a) and 9(b); Pltf.'s Exhibits 5 and 6)

8. On November 12, 1987, the Federal Railroad Administration announced a grant of $44,000.00 to the Commission for the purpose of publishing a Final Report. (Complaint and Answer, Paragraph 10)

9. On December 15, 1987, the Commission held its final official public meeting, during which the Commission authorized a contract with Plaintiff for the production of the Final Report. (Complaint and Answer, Paragraph 11; Pltf.'s Exhibit 6)

10. A contract between Plaintiff and the Commission was executed December 22, 1987, by Representative Rich-

ard A. Geist, for a maximum payment to Plaintiff of $12,-280.00. (Complaint, Paragraph 12, Pltf.'s Exhibit 4)

11. The aforesaid contract for services provided that Mr. Casey would "... direct, manage and edit the FINAL REPORT of the Commission's study on the feasibility of a high speed rail system between Pittsburgh and Philadelphia, with several intermediate stops, including Harrisburg." (Pltf.'s Exhibit 4; N.T. 25)

12. The aforesaid contract for services also provided that "Mr. Casey agrees to perform the work during the period between January 1, 1988, and June 30, 1988." (Pltf.'s Exhibit 4)

13. The aforesaid contract for services also provided that "[t]he Commission agrees to pay Mr. Casey's compensation for the $44,000 grant to the Commission from the Federal Railroad Administration." (Pltf.'s Exhibit 4)

14. The Department was not a signatory to the Contract for Services, between Representative Richard A. Geist and the Plaintiff. (Pltf.'s Exhibit 4)

15. On February 14, 1989, the Department secured a grant from the Federal Railroad Administration for reimbursement of the cost of publishing the Final Report of the Commission. (Pltf.'s Exhibit 10; N.T. 38)

16. The resolution passed by the Commission, of December 15, 1987, states as follows: "The Commission directs appropriate Commonwealth services to establish an account for the Final Report, not to be commingled with any other funds of the Commission or any other department, to be used only for deposit of the FRA grant and payments as authorized under this resolution." (Pltf.'s Exhibit 5)

17. In the minutes of the Commission's meeting of December 15, 1987, the same date that the aforesaid resolution was passed, the resolution was approved by a vote of the Commission members and was carried unanimously. (Pltf.'s Exhibit 6)

18. The aforementioned minutes of the Commission, dated December 15, 1987, reflect the following: "Mr. Geist said that, in the future, the Commission will be working with the

Commerce Department, rather than PennDOT, due to the legislation passed in 1987. He said the FRA check, when it arrives, will be presented to the new Secretary of Commerce, Ray Christman, for handling." (Pltf.'s Exhibit 6)

19. The predecessor of the Secretary of the Department of Commerce, Don Masiolo, was aware of the Commission's plan to complete the Final Report as set forth in the Commission's Resolution of December 15, 1987, and, in fact, Representative Richard A. Geist's decision to proceed as such was partially based on conversations held with the former Secretary of the Department of Commerce. (Pltf.'s Exhibit 2, Page 63)

20. Plaintiff established a work program for himself in order to produce the Final Report and with the termination of funding in August of 1987, the Department of Commerce was notified that they were to take charge of the records and other materials of the Commission and, in fact, they did take such materials. (Pltf.'s Exhibit 2, Pages 18–19; N.T. 32)

21. On or about April 1, 1988, the Secretary of the Department of Commerce, Raymond A. Christman, sent a letter to Plaintiff advising him that the Department of Transportation was responsible for the oversight of the High Speed Intercity Rail Passenger Commission, and that the Commission was no longer recognized by the Commonwealth. Secretary Christman further advised Plaintiff, in his correspondence dated April 1, 1988, that the Commission left a deficit balance and if additional funds were available, including the $44,000.00 grant from the Federal Railroad Administration, that said funds would be applied to the deficit left with the Department of Transportation. (Pltf.'s Exhibit 8)

22. On November 18, 1988, Secretary Christman sent a letter to James T. McQueen, Associate Administrator of the Federal Railroad Administration, indicating that "... the Pennsylvania Department of Commerce has been authorized to publish the High Speed Rail Commission report utilizing the Federal Rail (sic) Administration grant dedicated to this

purpose.... [T]he grant to the Pennsylvania High Speed Intercity Rail Passenger Commission of $44,000 will be serviced *on behalf of the Commission by this Department*.... [T]he Department of Commerce will use the Federal Rail (sic) Administration grant only for publishing the report or for expenses directly related to publishing the report." (Pltf.'s Exhibit 9; emphasis added)

23. On or about March 24, 1989, Secretary Christman directed a letter to Plaintiff concerning Plaintiff's draft copy of the High Speed Rail Commission's Final Report and invoice in the amount of $9,700.00. Secretary Christman's letter to Plaintiff indicated as follows: "We have no contract with you nor do we owe you any money for work that you did on behalf of the High Speed Rail Commission. Your invoice, therefore, has been directed to the inappropriate party." (Pltf.'s Exhibit 13)

24. The aforesaid letter from Secretary Christman to Plaintiff, dated March 24, 1989, also indicated as follows: "My main concern is to see that the federal grant awarded to the Department of Commerce is used for the purposes of publishing a Final Report. While I do appreciate the materials that you have provided me thus far, please understand that until I receive the report in its entirety, the project will remain on hold.... In the interest of everyone, I suggest that you forward the remaining portion of the High Speed Rail Report to me immediately." (Pltf.'s Exhibit 13)

25. Secretary Christman accepted Plaintiff's work, and in fact, Plaintiff established that the Final Report of the Commission, as published by the Pennsylvania Department of Commerce, made only one addition to the publication noting that "the Federal Railway Administration provided the necessary funding to cover the cost of printing the High Speed Rail Commission's Final Report." (Pltf.'s Exhibit 1; N.T. 23)

26. Plaintiff's Claim of $12,280.00 consists of a $9,700.00 Claim for the work performed, and a $2,580.00 Claim for work in creating maps, charts and graphs, etc., the later

[sic] of which Plaintiff admits was never supplied to Defendants. (Complaint, "Wherefore" Clause; N.T. 70)

27. Plaintiff's invoices total $10,233.30 although his Claim for compensation is $9,700.00, which Plaintiff apparently arrived at by subtracting the $2,580.00 figure from the total allocation for his services of $12,280.00. (Pltf.'s Exhibit 12; N.T. 66–68)

Based on its findings of fact, the board concluded that: (1) Casey had a binding written agreement with the Commission; (2) the Department, by its actions, formed the basis of a quasi-contract between Casey and the Department; (3) the Department was estopped from denying the existence of such a contract; (4) the fair and reasonable value of Casey's services performed in preparing the Final Report for the Commission and the Department was $9,700.00; and (5) the Department's arguments set forth in New Matter to the effect that Casey's contract with the Commission should be void, *ab initio*, were frivolous. Thereafter, the board entered an order finding in favor of Casey and against the Department and the Commission in the amount of $9,700.00, plus interest at the legal rate of six percent (6%) per annum beginning April 13, 1989. It is from that order that the Department now appeals to this court.

In reviewing decisions of the board, our scope of review is limited to determining whether the board committed an error of law or made findings of fact which are not supported by substantial evidence. The credibility of witnesses and the resolution of conflicting evidence is for the board to determine. *Department of Transportation v. Westmoreland Engineering Co.,* 63 Pa.Commonwealth Ct. 318, 438 A.2d 1005 (1981).

On appeal to this court, the Department argues that the contract entered into between Casey and the Commission was not a valid contract because it was entered into without legal review as required by the Commonwealth Attorneys Act [1] and

1. Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–101—732–506.

without competitive bidding; said contract violated the State Adverse Interest Act,[2] the Legislative Code of Ethics,[3] what is popularly called the Public Officials Ethics Act,[4] and the Code of Conduct for Appointed Officials and State Employes, commonly known as the Governor's Code of Conduct;[5] the board's determination that the Department, by accepting and publishing the Final Report, was estopped from denying the existence of a contract, is not in accordance with the law and not supported by substantial evidence; and Casey failed to introduce substantial evidence to show what work was actually performed, or that his work was of such benefit to the Department that it would be an injustice to allow the Department to retain it without payment.

Casey argues on appeal that the decision of the board was based on substantial evidence and that the conduct of the Department in arguing that Casey has committed ethical violations is frivolous, taken solely for delay, dilatory, obdurate, and vexatious, so as to justify awarding counsel fees and damages in accordance with Pa.R.A.P. 2744.

## I. STATE ETHICS LAWS

The Department devotes a great deal of its brief to the argument that the contract entered into between Casey and the Commission is invalid as against public policy because it was entered into in violation of various state ethics laws.[6] As a result, the Department contends the contract is unenforceable, either directly or through application to the Department

2. Act of July 19, 1957, P.L. 1017, as amended, 71 P.S. §§ 776.1—776.7a.

3. Act of July 10, 1968, P.L. 316, as amended, 46 P.S. §§ 143.1—143.8.

4. Act of October 4, 1978, P.L. 883, as amended, 65 P.S. §§ 401—413.

5. 4 Pa.Code §§ 7.151—7.159.

6. Casey asserts on appeal that the Department has waived this issue because it was not raised before the board below. However, a review of the record reveals that the Department raised this argument in its New Matter. In addition, the board stated in its Conclusions of Law that the Department's arguments set forth in its New Matter to the effect that Casey's contract with the Commission should be void, ab initio, were frivolous. Therefore, we will address on appeal the Department's argument regarding this issue.

by principles of equity. We disagree that the contract entered into between Casey and the Commission is in violation of various state ethics laws.

■ First, the State Adverse Interest Act is inapplicable to the contract between Casey and the Commission. Under the definition of state agency in the State Adverse Interest Act, the scope of the act is restricted to persons working for and activities involving agencies that are part of the executive branch of the state government. 71 P.S. § 776.2(8). However, the Commission in this case is not an executive agency but rather a legislative agency.

In *Commonwealth v. Sessoms*, 516 Pa. 365, 374–77, 532 A.2d 775, 780–81 (1987), our Supreme Court found that the Pennsylvania Commission on Sentencing was a legislative agency rather than an agency of the executive branch, due to the composition of the sentencing commission. The composition of the sentencing commission consisted of judicial, legislative, and executive members with no single governmental branch having control. *Sessoms*. Similarly, in the present case, the Commission under its enabling legislation, the High Speed Intercity Rail Passenger Commission Act, Act of December 22, 1981, P.L. 518, *as amended*, 55 P.S. § 683, was composed of legislative, executive, and private industry members divided between organized rail labor and the rail industry. Therefore, the State Adverse Interest Act is inapplicable to the contract between Casey and the Commission.

■ Second, the Legislative Code of Ethics is also inapplicable to the contract between Casey and the Commission. Under section 3(6) of the Legislative Code of Ethics,[7] "member" shall include a Senator, Representative, officer or employe of the General Assembly or any committee thereof; but not a person employed on a contractual basis or without compensation for a particular project. Although Casey was given the title Executive Director of the Commission, the

7. 46 P.S. § 143.3(6).

record reveals that he was not a member of the Commission.[8] In August 1987, funding for the Commission ceased and Casey was not being compensated by the Commission on December 15, 1987 when the contract was entered into between Casey and the Commission. Therefore, under the Legislative Code of Ethics, Casey was not a member whose actions came within the purview of the Legislative Code of Ethics and no violation of said code occurred when Casey and the Commission entered into a contract for Casey to produce the Final Report.

■ Third, the Department argues that the contract violated the Public Officials Ethics Act by citing the 1989 amendments to this act which included in the definition of public official any person appointed by a governmental body, or an appointed official in the executive, legislative or judicial branch of the state. 65 P.S. § 402. However, the 1989 amendments to the Public Officials Ethics Act are to be applied prospectively, not retroactively, unless the legislature clearly and manifestly expresses an intent to the contrary. *See* 1 Pa.C.S. § 1926. A review of the 1989 amendments to the Public Officials Ethics Act contains no such expression by the legislature; therefore, the Department's contention that the contract between Casey and the Commission violated said act must fail.

■ Fourth, the contract entered into between Casey and the Commission did not result in a violation of the Governor's Code of Conduct. Representative Geist, who co-sponsored the legislation to form the Commission and served as Chairman of the Commission, testified in his deposition that the Commission was not subject to the Governor's jurisdiction. In addition, as discussed previously in this opinion, the Commission is a legislative agency not an executive agency. Therefore, the

8. The members of the Commission consisted of Representative Richard A. Geist, Representative Amos Hutchinson, Senator J. Doyle Corman, Senator J. Barry Stout, Everett Croyle, an organized rail labor representative, Richard Sullivan, a railroad industry representative, Kent Rowe, an executive branch representative, Robert Gleason, a public interest representative, and Robert Patterson, a public interest representative.

Governor's Code of Conduct is not applicable to the contract entered into between Casey and the Commission.

Accordingly, the board did not err, as a matter of law, in concluding that the Department's arguments raised in its New Matter that alleged that the contract between Casey and the Commission was void, *ab initio*, were without merit.

## II. COMMONWEALTH ATTORNEYS ACT

■ The Department argues that the contract between Casey and the Commission was entered into without the legal review required by section 204 of the Commonwealth Attorneys Act [9] and should be deemed unenforceable and void. In response, Casey contends that because he reasonably relied on the Commonwealth for payment, he does not need the approval of the Attorney General. We agree with Casey's contention.

In *Dixon Contracting Company, Inc. v. Department of Environmental Resources*, 80 Pa.Commonwealth Ct. 445, 451–52, 474 A.2d 701, 705 (1984), this court found that the Commonwealth was estopped from arguing that a contract to eliminate air pollution from a burning culm bank was invalid and therefore unenforceable, because the Secretary of the Department of Mines and Minerals Industries signed the document without approval of the Attorney General and the contractor had detrimentally relied on the authority of the Secretary to bind the Commonwealth contractually. Similarly, in the present case, the record and the board's findings of fact support Casey's assertion that he reasonably relied on the authority of Commission members, former Secretary of Commerce Don Masiolo and former Secretary of Commerce Raymond Christman to contractually bind the Commonwealth and that he would be paid for his professional services.

Accordingly, the Department is estopped from arguing the invalidity of the contract between Casey and the Commission based on the lack of review of the contract by the Attorney General pursuant to the Commonwealth Attorneys Act.

9. 71 P.S. § 732–204.

## III.  EXISTENCE OF QUASI-CONTRACT

The Department argues that it may not be estopped from denying the existence of a contract which violates law and public policy.  The basis for the Department's argument is that the contract between Casey and the Commission violates established public policy of the Commonwealth and was adopted without the independent legal review required by the Commonwealth Attorneys Act;  therefore, the contract cannot be relied upon as the basis of any cause of action against the Department, whether direct or indirect, by application of equitable principles.

However, as this court has already determined, the contract between Casey and the Commission did not violate any of the Commonwealth's established public policy, i.e., various state ethics laws, or the Commonwealth Attorneys Act.  Accordingly, the board did not err in applying equitable principles in finding that a quasi-contract existed between Casey and the Department.

The board is empowered to hear not only claims arising from written contracts, but also quasi-contractual claims implied in law.  *Smock v. Commonwealth,* 57 Pa.Commonwealth Ct. 67, 425 A.2d 883, *aff'd,* 496 Pa. 204, 436 A.2d 615 (1981).  Quasi-contracts are contracts implied in law and they are created by law for reasons of justice.  *Department of Public Welfare v. Moran,* 84 Pa.Commonwealth Ct. 554, 480 A.2d 356 (1984).

In the present case, we agree with the board that the sequence of events, along with the fact that Casey's work product was accepted in its entirety and published by the Department, serve to form the basis of a quasi-contract and estop the Department from denying payment to Casey.  In addition, the record reveals that the board's findings and conclusions of law are supported by substantial evidence.

Equitable estoppel is a doctrine of fundamental fairness designed to preclude a party of depriving another of the fruits of a reasonable expectation when the party inducing

the expectation knew, or should have known, that the other would rely. *DeFrank v. County of Greene,* 50 Pa.Commonwealth Ct. 30, 412 A.2d 663 (1980). Equitable estoppel can be applied to a governmental agency. *Department of Environmental Resources v. Dixon Contracting Company, Inc.,* 80 Pa.Commonwealth Ct. 438, 471 A.2d 934 (1984). The doctrine of equitable estoppel prevents one from doing an act differently from the manner in which another one was induced by word or deed to expect. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983).

In the present case, Casey performed the work necessary for the completion of the Final Report of the Commission. The Commission requested that Casey produce a Final Report as evidenced by the contract between Casey and the Commission. The contract was accepted and adopted by all members of the Commission with the Chairman, Representative Geist, stating that the Commission would be working with the Commerce Department, rather than PennDOT, to produce the Final Report.

The Department requested a $44,000.00 grant from the Federal Railroad Administration for the purpose of publishing the Final Report and paying any expenses associated with said publication. Secretary Christman indicated in November 1988 in a letter to the Federal Railroad Administration that the grant would be serviced on behalf of the Commission by the Department. This letter contradicted earlier statements to Casey that the Department did not recognize the Commission since the Commission expired by law on December 31, 1987.

The Department accepted and utilized Casey's draft of the Final Report and only informed Casey that he would not be paid for his services after receiving the Final Report from Casey. In addition, the Department asked Casey to forward the remainder of the Final Report to it immediately so that the $44,000.00 grant from the Federal Railroad Administration would not be jeopardized. The Department did not deny that it published the Final Report in essentially the exact same format submitted by Casey to Secretary Christman.

Based on these facts, the board properly estopped the Department from denying payment to Casey for the preparation of the Final Report of the Commission. The Department has been unjustly enriched by accepting Casey's draft of the Final Report without paying him for the reasonable value of his services. Accordingly, the board did not err in finding that a valid contract existed between Casey and the Commission and that a quasi-contract existed between Casey and the Department concerning the preparation of the Final Report.

Finally, the Department argues that the board's finding that the Department is liable to Casey in the amount of $9,700.00 is not supported by substantial evidence as Casey did not show what work was actually performed. Damages must be proven with a reasonable degree of certainty; however, damages do not have to be determined with mathematical precision. *Standard Pipeline Coating Company, Inc. v. Solomon & Teslovich, Inc.*, 344 Pa.Superior Ct. 367, 496 A.2d 840 (1985). Mere uncertainty as to the amount of damages will not bar recovery where it is clear that the damages were the certain result of defendant's conduct. *Id.*

In the instant case, the total amount of Casey's claim was the contract price of $12,280.00 which Casey had broken down into two parts. Casey requested $9,700.00 for the work performed in drafting the Final Report and $2,580.00 for work in creating maps, charts and graphs. Casey admitted that he never supplied the maps, charts or graphs to the Department. Since Casey never supplied the items supporting his $2,580.00 claim, Casey subtracted this amount from the $12,280.00 amount to arrive at his claim of $9,700.00. As found by the board, the work was not done on an hourly basis and pursuant to the contract between Casey and the Commission, the work was to be billed in six equal installments upon presentation of monthly invoices. Therefore, the record reveals that the board properly determined the amount of Casey's damages from the evidence presented by Casey to support his claim.

Accordingly, the order of the board is affirmed.

## IV. AWARD OF COUNSEL FEES

■ Casey has requested that this court award him counsel fees and interest pursuant to Pa.R.A.P. 2744.[10] Casey believes that the Department's behavior in questioning his ethics is frivolous, taken solely for delay, dilatory, obdurate and vexatious, because the issue of Casey's ethics were never questioned before the board by the Department. As stated previously in this opinion, the issue of whether or not the contract between Casey and the Commission violated any of the Commonwealth's ethics laws was properly preserved for appeal.

■ An appeal is considered frivolous and warrants an award of attorney fees if, either as a matter of fact or law, the appellant's contentions have no likelihood of success. *Sampaolo v. Cheltenham Township*, 141 Pa.Commonwealth Ct. 511, 596 A.2d 287 (1991). Such an award of damages by an appellate court is discretionary. *Id.* An appeal is not frivolous for purposes of awarding attorney fees merely because it lacks merit. *Davis v. Board of Probation and Parole*, 134 Pa.Commonwealth Ct. 643, 579 A.2d 1372 (1990).

In the present case, we find that the Department's appeal was neither frivolous or taken solely for delay, dilatory, obdurate or vexatious. Accordingly, Casey's request for attorney fees and costs pursuant to Rule 2744 is denied.

## ORDER

NOW, this 1st day of April, 1993, the order of the Pennsylvania Board of Claims, dated June 2, 1992, at No. FC–759–89,

10. Rule 2744 provides:
In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
(1) A reasonable counsel fee and
(2) Damages for delay at the rate of 6% per annum in addition to legal interest,
if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

is affirmed, and Robert J. Casey's request for attorney fees and costs pursuant to Pa.R.A.P. 2744 is denied.